UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERRY ALAN MULLINS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0117-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 19. Attorney Jeffrey Schwab represents Terry Alan Mullins (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On October 1, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income benefits, alleging disability since July 12, 2009, due to back condition, anxiety, depression, dysuria, hematuria, and joint and muscle pain/weakness. Tr. 207, 209, 243. At the time of the administrative hearing, Plaintiff amended the alleged onset date of disability to October 1, 2012, the application date. Tr. 47. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Jesse K. Shumway held a hearing on June 26, 2015, Tr. 38-98, and issued an unfavorable decision on July 31, 2015, Tr. 12-

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

28. The Appeals Council denied review on February 6, 2017. Tr. 1-7. The ALJ's July 2015 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on March 31, 2017. ECF No. 1, 3.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on November 11, 1965, and was 46 years old on the amended alleged onset date, October 1, 2012. Tr. 47, 207, 209. He completed high school and one year of college. Tr. 244. Plaintiff's disability report indicates he stopped working on June 1, 2011, because of his condition(s). Tr. 243. Plaintiff testified at the June 26, 2015, administrative hearing that he applied for work in late 2012 or 2013 at an auto parts store, in waste management, and for a cleaning company, but he had not been successful in securing employment. Tr. 76-78. He stated he continued to look for work and believed he would be able to work at an auto parts store. Tr. 78-79, 85. Plaintiff later clarified he felt he could stand at a desk, answer phones, answer questions, and operate a point of sale computer at an auto parts store, but would not be able to physically retrieve and deliver heavy auto parts to customers. Tr. 85-87.

Plaintiff testified he suffered back pain "24 hours a day, seven days a week." Tr. 61. He indicated it is typical he will need to lie down two to three times during the day, with an icepack, for 30 minutes to an hour each time due to his back pain. Tr. 66-67. He stated he also has at least three or four "bad days" per month where it is difficult to even get out of bed and do basic activities. Tr. 62-63.

Plaintiff also testified he has diabetes and has had difficulty controlling his diabetes. Tr. 64. As a result, he had neuropathy in his feet and the occurrence of six or seven sebaceous cysts that he has had to have drained. Tr. 65. He stated he

also experienced right arm/shoulder and bilateral knee pain as well as a loss of sensation/feeling in his right hand. Tr. 74-75, 80, 81, 83. There was no mention or discussion of any symptoms related to mental impairments at the time of the administrative hearing.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen*

*v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupation. 20 C.F.R. § 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 31, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, October 1, 2012. Tr. 14. At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, obesity, bilateral knee degeneration, right shoulder impairment, and right hand numbness. Tr. 15. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform light exertion level work with the following limitations: he is able to stand and walk only four hours in an eight-hour workday; he cannot use his right hand when walking because of his use of a cane; he is able to sit only one hour at a time, followed by a minute or two of standing and stretching; he can only occasionally reach overhead on the right and frequently handle and finger with the right hand; he cannot climb ladders, ropes or scaffolds

and only occasionally perform other postural activities; he cannot have concentrated exposure to extreme cold or heat or vibration and can have no exposure to hazards such as unprotected heights and moving mechanical parts; and he cannot operate a motor vehicle. Tr. 20.

At step four, the ALJ determined Plaintiff could not perform his past relevant work as an automobile mechanic. Tr. 27. However, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of mail sorter, production assembler and inspector, hand packager. Tr. 27-28. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 1, 2012, the amended alleged onset date, through the date of the ALJ's decision, July 31, 2015. Tr. 28.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in this case by (1) failing to find Plaintiff's diabetes and related skin conditions and mental health problems were severe impairments at step two of the sequential evaluation process; (2) improperly rejecting the medical opinion of Brent Packer, M.D.; (3) improperly rejecting Plaintiff's subjective complaints; and (4) relying on vocational expert testimony that was based on an incomplete hypothetical. ECF No. 15 at 10-19.

**DISCUSSION**

**A.    Brent Packer, M.D.**

Plaintiff asserts the ALJ erred by failing to accord proper weight to the opinions of Dr. Packer. ECF No. 15 at 12-13.

///

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Moreover, the ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

On January 13, 2013, Dr. Packer assessed Plaintiff's functional abilities as part of a review of the medical evidence for the Washington State Department of Social and Health Services. Tr. 368-374. Dr. Packer was thus a reviewing, nonexamining physician in this case. The ALJ accorded little weight to Dr. Packer's opinions regarding Plaintiff's physical capacity. Tr. 22-23.

Dr. Packer opined that Plaintiff would be limited to "less than sedentary overall activity," Tr. 368, and noted it was reasonable to conclude that Plaintiff's combination of impairments would preclude a 40 hour sustained workweek, Tr. 369. However, Dr. Packer also found that Plaintiff had the ability to lift 20 pounds

maximum and frequently lift or carry up to 10 pounds, with no medical evidence available to address Plaintiff's ability to stand, walk or sit for periods of time. Tr. 372. When provided a check-box selection which included categories for "light" and "less than sedentary," Dr. Packer indicated Plaintiff was limited to "sedentary" work. Tr. 372.

In according "little weight" to Dr. Packer's opinions of Plaintiff's physical capacity, the ALJ first noted that Dr. Packer's January 13, 2013 opinion was issued only a few months before Plaintiff's back surgery, when Plaintiff's pain was at or near its worst. Tr. 22. The record reflects that two months later, on March 12, 2013, Plaintiff underwent a left L5-S1 revision discectomy, Tr. 454, and, on April 5, 2013, reported "feeling significantly better," Tr. 491. On April 18, 2013, Plaintiff reported his back was doing well and he no longer had sciatica pain. Tr. 571. Several months later, on December 2, 2013, back pain was not mentioned in a follow up appointment, nor was a back impairment diagnosed by the medical provider. Tr. 625-627.

The ALJ next indicated Dr. Packer's opinion was internally inconsistent. Dr. Packer limited Plaintiff to sedentary exertion level work, Tr. 372, which limits lifting to no more than 10 pounds at a time, 20 C.F.R. §§ 404.1567(b), 416.967(b). This is an inconsistency because Dr. Packer also found Plaintiff capable of lifting 20 pounds at a time, Tr. 372, which characterizes the more strenuous "light" exertion level work.[1] Tr. 22-23. The ALJ correctly found Dr. Packer's report was internally inconsistent.

---

[1]Light level work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in the light exertion level category requires a good deal of walking or standing or involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

With regard to the weight of the evidence of record pertaining to Plaintiff's physical capacity, Lynne Jahnke, M.D., testified as a medical expert at the June 26, 2015 administrative hearing and was accorded "great weight" by the ALJ. Tr. 26, 45-59. Plaintiff has not contested the weight accorded to Dr. Jahnke. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (the Court will not ordinarily consider matters on appeal that were not specifically and distinctly argued in a party's opening brief).

Dr. Jahnke indicated Plaintiff had degenerative disc disease in the lumbosacral spine, but he had done well following two back surgeries. Tr. 48. She found that the assessed limitation to the light exertional level was consistent with Plaintiff's episodic, rather than chronic, back pain.[2] Tr. 48. Dr. Jahnke opined that Plaintiff did not meet or equal Listing 1.04 (disorders of the spine) because he did not have continuous nerve root compression for twelve consecutive months; rather, it was episodic. Tr. 49. Dr. Jahnke testified that Plaintiff would be limited to light exertion level work: lifting up to 20 pounds occasionally and 10 pounds frequently; no limitations on sitting, but a sit/stand option (every hour he would be allowed to stand up and stretch his low back for a minute or so); no limitation on standing and walking; and some postural and environmental limitations. Tr. 54-55. Christine E. Bosa, ARNP, examined Plaintiff in October 2012, Tr. 402, and completed a DSHS physical functional evaluation form in October 2012 which, consistent with Dr. Jahnke, opined that Plaintiff was limited to light exertion level work, Tr. 355. State agency medical consultant, Dale Thuline, M.D., also opined that Plaintiff was limited to light exertional level work, but with the ability to stand

///

---

[2]It was noted that Plaintiff was doing well after his second back surgery, reporting no sciatica, and that his recurrence of back pain occurred when he was trimming hedges with a chainsaw. Tr. 48, 703.

and walk for only four hours and sit only six hours in an eight-hour workday. Tr. 26, 127, 137.

The record reflects that no medical professional, other than nonexamining physician Packer, has assessed greater physical limitations than determined by the ALJ in this case. The restriction to sedentary or less than sedentary work as opined by Dr. Packer just prior to Plaintiff's second back surgery is not supported by the weight of the record evidence.

The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial record evidence, for discounting Dr. Packer's report. The ALJ did not err by rejecting Dr. Packer's opinions pertaining to Plaintiff's physical functioning.

**B.     Plaintiff's Symptom Testimony**

Plaintiff also challenges the ALJ's finding that Plaintiff was not entirely credible, Tr. 25. ECF No. 15 at 13-17.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, although Plaintiff was generally a sincere and believable witness, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Tr. 25.

The ALJ first indicated the medical evidence of record did not support Plaintiff's alleged three to four "bad days" a month, which he described as causing a difficulty to even get out of bed and do basic activities, Tr. 62-63. Tr. 25. A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided that it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.); *see also Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

The Court has reviewed the medical record, and specifically the citations identified in Plaintiff's brief, ECF No. 15 at 14, and finds no support for Plaintiff's assertion that he experienced multiple days during a month where he found it difficult to even get out of bed. The majority of the records cited by Plaintiff discuss Plaintiff's uncontrolled diabetes and related scalp cysts and sores/abscesses. Included in the records cited by Plaintiff for his assertion that he was "in severe pain and was trying everything he could to get rid of his pain," ECF No. 15 at 14, is a report which indicated Plaintiff "has been feeling pretty well," Tr. 587, and another report, the only one cited that specifically discussed Plaintiff's back pain complaints, that stated Plaintiff's symptoms were relieved by pain medications, Tr. 700. As indicated by the ALJ, the medical evidence of record does not support Plaintiff's allegation of suffering three to four "bad days" a month, which resulted in difficulty to get out of bed and do basic activities.

The ALJ next noted Plaintiff has consistently been limited to light exertion level work. Tr. 25. In assessing a Plaintiff's subjective pain and symptom testimony, an ALJ may consider whether the alleged symptoms are consistent with

the medical evidence. *Lingenfelter*, 504 F.3d at 1040. Here, as discussed in Section A above, other than the properly rejected opinion of Dr. Packer, the entirety of the medical evidence of record reflects that Plaintiff is limited to no greater than a restricted range of light exertion level work. *See supra*.

Plaintiff contends that the limitation to light work does not account for the electromyogram (EMG) study completed on June 12, 2015, Tr. 711, because it was not considered by the medical expert. ECF No. 15 at 15. However, the ALJ did take the EMG study into consideration, Tr. 25, and Plaintiff does not identify any specific limitations based on the EMG results that the ALJ erroneously omitted or failed to account for in the RFC determination. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should[er] injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.").

The ALJ next indicated Plaintiff's reported activities such as fishing and working on cars were inconsistent with his assertions of totally disabling symptoms. Tr. 25. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was entirely proper for the ALJ to find Plaintiff's reports of activities such as working under and on a car, Tr. 548, 617, and fishing, Tr. 362, 651, were inconsistent with Plaintiff's alleged limitations and thus detracted from his overall credibility. Tr. 24, 25.

Finally, the ALJ held that Plaintiff's statements that he believed he was capable of performing some work, Tr. 78-79, 361, diminished his credibility. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), as amended (Nov. 9, 2001) (finding that an ALJ properly discredited a claimant's testimony because he

"stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured"); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (ALJ properly considered fact that claimant "claimed disability dating from his last day of employment even though he admitted at the hearing that he left his job because his employer went out of business and probably would have worked longer had his employer continued to operate."). An ALJ may, in general, discount a claimant's testimony where it is internally inconsistent or inconsistent with his other statements. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

Plaintiff testified at the administrative hearing that he continued to look for work and believed he would be able to work at an auto parts store. Tr. 78-79, 85. Plaintiff thereafter clarified he felt he could stand at a desk, answer phones, answer questions, and operate a point of sale computer at an auto parts store, but would not be able to physically retrieve and deliver heavy auto parts to customers. Tr. 85-87. At a January 3, 2013 psychological evaluation, Plaintiff indicated he continued to fill out job applications and search for jobs. Tr. 361. He mentioned the possibility of performing work like a cashier's job, front counter work, or as a customer service agent at a Staples or Home Depot. Tr. 361. Plaintiff's continued job search and reported belief that he possessed the ability to perform some work is inconsistent with his assertion of total disability.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear

and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

**C.     Severe Impairment**

Plaintiff contends the ALJ also erred by failing to find Plaintiff's diabetes and related skin conditions and mental impairment were severe impairments at step two of the sequential evaluation process. ECF No. 15 at 10-12.

Plaintiff has the burden of proving he has a severe impairment. 20 C.F.R. §§ 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows he is disabled. 20 C.F.R. § 416.912(a). The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process. S.S.R. 96-4p.

The record reflects that Plaintiff has been treated on numerous occasions for uncontrolled diabetes and related skin conditions (cysts and abscesses). However, the mere existence of an impairment is insufficient proof of a severe impairment. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Here, Plaintiff has not identified any specific limitations assessed by providers resulting from the uncontrolled diabetes and related skin conditions, *see Edlund v. Massanari*, 253 F.3d 1152, 1159-1160 (9th Cir. 2001) (a claimant must prove an impairment affects his ability to perform basic work activities), nor has he demonstrated that the impairments meet the durational requirements of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall be considered disabled if he has an impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months). The medical evidence of record does not establish any specific work-related limitations, lasting for a continuous period of not less than 12 months, resulting from Plaintiff's uncontrolled diabetes and related skin conditions. Tr. 16. Therefore, the ALJ correctly found Plaintiff's diabetes and related skin conditions were not severe impairments.

With respect to Plaintiff's mental health, Plaintiff claimed anxiety and depression as conditions that limited his ability to work on his disability form. Tr. 243. However, at the administrative hearing, Plaintiff did not mention depression or anxiety and did not discuss any symptoms related to any alleged mental impairments. Tr. 59-89. Moreover, Plaintiff's briefing fails to specify any functional limitations stemming from any alleged mental health issue. *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

Regarding the medical evidence of record, state agency psychological consultants John F. Robinson, Ph.D., and Diane Fligstein, Ph.D., found Plaintiff's mental impairments to be non-severe. Tr. 104-105, 113-114, 125-126, 135-137. Plaintiff was diagnosed by Ms. Bosa with bipolar affective disorder on May 21, 2014, Tr. 653; however, as correctly determined by the ALJ, Ms. Bosa, a nurse, is not an "acceptable medical source" which is required to establish the existence of a medically determinable impairment. Tr. 17. In any event, Ms. Bosa did not attribute any functional limitations to the diagnosed disorder that would affect Plaintiff's ability to perform basic work activities. Plaintiff additionally underwent a psychological evaluation with Steven J. Zimberoff, Ph.D., on January 3, 2013, and was diagnosed with adjustment disorder, chronic, with mildly depressed mood. Tr. 363. Dr. Zimberoff stated that while Plaintiff presented with mild depression, he was able to function well cognitively. Tr. 363. He reported that Plaintiff appeared to have no significant difficulties focusing on task, was very pleasant and cooperative, and was able to communicate well. Tr. 364. Dr. Zimberoff opined

that Plaintiff was "easily able to understand, remember and follow one, two, or more step instructions" and appeared to have no significant difficulties interacting with the public, co-workers and supervisors. Tr. 364. Dr. Zimberoff did not assess any functional limitations stemming from the diagnosed adjustment disorder.

Based on the foregoing, the weight of the evidence of record shows that Plaintiff's mental impairment (affective disorder) did not significantly limit his ability to perform basic mental work activities. Accordingly, the Court finds the ALJ also correctly determined at step two of the sequential evaluation process that Plaintiff's mental health condition was not a severe impairment. Tr. 17-19.

**D.     Step Five**

Plaintiff contends that the ALJ erred by relying on the vocational expert's testimony in response to a hypothetical that was not supported by the weight of the record evidence. ECF No. 15 at 17-19.

As determined above, the ALJ did not err by rejecting Dr. Packer's opinions pertaining to Plaintiff's physical functioning, by finding Plaintiff's symptom allegations were not entirely credible, and by concluding at step two that Plaintiff's diabetes and related skin conditions and affective disorder were not severe impairments. As such, the ALJ's ultimate RFC determination is supported by substantial evidence and free of error.

The ALJ's RFC determination held that Plaintiff could perform light exertion level work with certain postural and environmental limitations. Tr. 20. At the administrative hearing held on June 26, 2015, the vocational expert testified that with the restrictions assessed by the ALJ, Plaintiff retained the capacity to perform a significant number of jobs existing in the national economy, including the positions of mail sorter, production assembler and inspector, hand packager. Tr. 92-94. Since the vocational expert's testimony was based on a proper RFC determination by the ALJ, Plaintiff's step five argument is without merit.

///

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED March 20, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE